IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIMOTHY MALONE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 08-467-GPM |
| | ) |
| TCT MINISTRIES, INC., d/b/a | ) |
| TCT Television Network, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

### I. INTRODUCTION

Plaintiff Timothy Malone brings this action against Defendant TCT Ministries, Inc. ("TCT"), d/b/a TCT Television Network pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* In February 2007 TCT, a television network headquartered in Marion, Illinois, that specializes in religious broadcasting, hired Malone as a director. On March 13, 2007, Malone commenced a three-month period of probationary employment as a director for TCT. On June 7, 2007, TCT terminated Malone's employment, citing unsatisfactory job performance. Malone contends that his job performance was satisfactory and that the real reason for his termination is that he suffers from Dystol Myelopathy, a degenerative muscle disease that affects Malone's ability to walk and to climb stairs. Currently this matter is before the Court on TCT's motion for summary judgment (Doc. 18) and motion to strike an affidavit proffered by Malone in opposition to summary judgment (Doc. 26). The motions have been fully briefed and are ripe for decision. The Court rules as follows.

## II. ANALYSIS

As an initial matter the Court notes the standard under which it must evaluate a request for summary judgment. Rule 56 of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). Summary judgment may be granted in favor of a party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Westefer v. Snyder*, Civil Nos. 00-162-GPM, 00-708-GPM, 2009 WL 2905548, at *3 (S.D. Ill. Sept. 4, 2009). "An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Newell v. Westinghouse Elec. Corp.*, 36 F.3d 576, 578 (7th Cir. 1994). Only facts that might affect the outcome of the case are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must consider all facts in a light most favorable to the non-moving party. *See Flaherty v. Gas Research Inst.*, 31 F.3d 451, 456 (7th Cir. 1994). Additionally, a court does not judge the credibility of the witnesses or weigh the evidence in search of a preponderance as would a jury. *See Futrell v. J.I. Case*, 38 F.3d 342, 346 (7th Cir. 1994). Rather, the court performs the more restrictive function of determining if the evidence in support of the non-movant's position is substantial. *See id*.

A court must enter summary judgment where the non-moving party fails to make a sufficient showing to establish the existence of an essential fact of its claim, on which it will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The moving party bears the initial burden of identifying

the portions of the record which it believes demonstrate the absence of a genuine issue of material fact and entitle it to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 323. Once a properly supported motion for summary judgment has been filed, the non-moving party must set forth specific facts showing there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Thus, the non-movant must demonstrate that there is admissible evidence that will support its position. *See id.* That evidence must be sufficiently strong that a jury could reasonably find for the non-movant. *See Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir. 1994). Summary judgment is not precluded merely because a case involves issues of motive or intent, *see Meister v. Georgia-Pacific Corp.*, 43 F.3d 1154, 1159 (7th Cir. 1995), but the standard enunciated here is applied with added rigor in employment discrimination cases, where intent and credibility are often crucial issues. *See Robinson v. PPG Indus., Inc.*, 23 F.3d 1159, 1162 (7th Cir. 1994).

As noted, Malone brings this action under the ADA, which provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Williams v. Excel Foundry & Mach., Inc.*, 489 F.3d 309, 310-11 (7th Cir. 2007).[1] A "disability" for purposes of the statute can be "(A) a physical

---

1. Pursuant to the ADA Amendments Act of 2008, Pub. L. No. 110-325, 112 Stat. 3553 (codified as amended at 29 U.S.C. § 12101 *et seq.*), certain amendments to the ADA became effective on January 1, 2009. However, the United States Court of Appeals for the Seventh Circuit has held that these amendments to the ADA are not retroactive. *See Winsley v. Cook County*, 563 F.3d 598, 600 n.1 (7th Cir. 2009); *Kiesewetter v. Caterpillar Inc.*, 295 Fed. Appx. 850, 851 (7th Cir. 2008) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994)). Accordingly, the Court evaluates Malone's employment discrimination claim in this case under the ADA of 1990.

or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). *See also Mattice v. Memorial Hosp. of South Bend, Inc.*, 249 F.3d 682, 684 (7th Cir. 2001). To establish a claim of discrimination under the ADA, Malone must demonstrate that: (1) he was disabled within the meaning of the ADA; (2) his work performance met TCT's legitimate expectations; (3) he was terminated; and (4) the circumstances surrounding his termination indicate that it is more likely than not that his disability was the reason for the termination. *See Leisen v. City of Shelbyville*, 153 F.3d 805, 807 (7th Cir. 1998); *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 725 (7th Cir. 1998); *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 794 (7th Cir. 1997). "Once a plaintiff establishes all four elements the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for firing the plaintiff." *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797 (7th Cir. 1995). However, if Malone fails to establish his prima facie case, the burden does not shift. *See Gorbitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999) (citing *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997)). Conversely, if the burden shifts but TCT articulates a legitimate, non-discriminatory reason for terminating Malone, then Malone must prove that TCT's stated reason for firing him is merely a pretext for discriminatory action, either "directly with evidence that [TCT] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." *DeLuca*, 53 F.3d at 797 (quoting *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir. 1993)). "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id*. at 797-98 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)).

In this instance TCT contends that Malone failed to meet its legitimate expectations in numerous respects. According to TCT, a very large component of Malone's duties at the network was directing live programming, but Malone proved to be an unsatisfactory live director. In particular, TCT contends, Malone was very slow in giving direction to camera operators and setting up live camera shots (what TCT terms, respectively, "calling the shots" and "punching the board"). Malone also had difficulty, TCT asserts, with paying attention to graphics when they came up and with the time for taking them down, and tended to stay too long on camera shots. TCT argues also that Malone was unable to learn how to operate and focus TCT's high definition digital video cameras and was unable to train camera operators to focus the cameras. Further, TCT claims that Malone's demeanor on the job was poor and that on more than one occasion Malone shouted at co-workers and volunteers at the network, with the result that at least one volunteer was driven away from the network; TCT relies heavily, it asserts, on volunteers to assist with tasks like camera operation. TCT claims that on one occasion Malone directed a TCT employee to alter the audio in a studio so that Malone could eavesdrop on a conversation among guests who were waiting for a program to begin, in contravention of a TCT policy; when the audio technician refused to violate the policy, Malone began shouting at the technician. According to TCT, Malone was unable to master the format TCT used for labeling videocassettes. TCT asserts further that Malone was unable to complete a minor video editing assignment successfully, and the outcome of the project was deemed by TCT not to be suitable for broadcast; also, TCT asserts, Malone was unable to load video editing software onto a video editing system called Final Cut Pro. Finally, according to TCT, on one occasion Malone fell asleep while observing the taping of an hour-long program of which Malone was to direct the last thirty minutes; as a result of this incident a reprimand was placed in

Malone's personnel file. TCT asserts that even before Malone was hired concerns were raised about his ability to direct live television programs by Fortune Brayfield, TCT's director of operations and Malone's supervisor, and that throughout Malone's employment by TCT complaints about Malone's job performance were voiced by TCT personnel like Brayfield, Sharon Hoffman, TCT's director of human resources, Mike Daly, TCT's vice president for legal affairs, and Garth Coonce, the founder and president of TCT.

Malone for his part challenges TCT's assessment of his job performance. According to Malone, problems directing live programs are attributable to TCT's reliance on badly-trained volunteer camera operators. With respect to the incident involving sleeping on the job for which Malone was reprimanded, Malone contends that, although he did in fact fall asleep, he was merely observing the taping of a program and was not responsible for directing it. Most critically, Malone proffers the affidavit of Marvin Rhodes, who was TCT's vice president of operations from the beginning of Malone's employment by TCT until May 21, 2007, and who was one of the decision-makers at the network responsible for hiring Malone. TCT has moved to strike Rhodes's affidavit from the summary judgment record, and therefore the Court must address the sufficiency of the affidavit under Rule 56.[2] Under that rule, "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e). *See also Friedel v. City of Madison*, 832 F.2d 965, 969 (7th Cir. 1987). TCT contends that Rhodes's affidavit

---

2. The Court notes that Rule 12(f) of the Federal Rules of Civil Procedure, under which TCT purports to bring its motion to strike Rhodes's affidavit, applies only to pleadings, not to exhibits attached to a brief. *See Kitson v. Bank of Edwardsville*, 240 F.R.D. 610, 611 (S.D. Ill. 2006). The Court construes TCT's motion as a request for the Court to exclude Rhodes's affidavit from evidence.

does not comport with Rule 56(e) in that the affidavit is not sworn, notarized, or dated. With respect to the procedural deficiencies in Rhodes's affidavit identified by TCT, that it is not sworn, notarized, or dated, an affidavit in the form of a declaration need not be notarized, but it must contain a statement that the declaration is being made under penalty of perjury and be dated. *See* 28 U.S.C. § 1746; *DeBruyne v. Equitable Life Assurance Soc'y of U.S.*, 920 F.2d 457, 471 (7th Cir. 1990); *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 n.19 (1970)). Malone now has furnished the Court with a copy of Rhodes's affidavit that is sworn, notarized, and dated. *See* Doc. 28-1. Thus, the procedural deficiencies in Rhodes's original affidavit have been cured.

In addition to challenging Rhodes's affidavit as procedurally deficient, TCT challenges various paragraphs of the affidavit on other grounds. Specifically, TCT challenges as containing information not based on Rhodes's personal knowledge that amounts to conjecture or speculation paragraphs 8 through 11, paragraphs 13 through 14, paragraphs 17 through 18, paragraphs 20 through 22, paragraphs 24 through 26, and paragraph 28 of Rhodes's affidavit. Additionally, TCT challenges paragraphs 15 and 16 of Rhodes's affidavit as containing legal conclusions. Paragraphs 17 and 18 of the affidavit are challenged as containing hearsay, in addition to containing, in TCT's view, information not based on Rhodes's personal knowledge. Finally, paragraph 28 of the affidavit is challenged as contradicting Malone's deposition testimony, in addition to being, according to TCT, conjectural and not based on Rhodes's personal knowledge. Having reviewed the affidavit carefully the Court concludes that TCT's objections are unfounded. As a general rule, of course, an affiant must have personal knowledge of the information contained in his or her affidavit, and an affidavit may not contain inadmissible hearsay or legal conclusions. *See*

*Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 722 (7th Cir. 1995); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989); *Pfeil*, 757 F.2d at 862-63. Similarly, an affidavit that contradicts the affiant's earlier deposition testimony cannot create a genuine issue of material fact at the summary judgment stage of a case. *See Russell v. Acme-Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995); *Essick v. Yellow Freight Sys., Inc.*, 965 F.2d 334, 335 (7th Cir. 1982). Here the statements by Rhodes that TCT challenges as speculative appear to be proper lay opinion testimony based upon Rhodes's personal knowledge as the TCT officer who, the parties do not dispute, was responsible for overseeing operations and programming for TCT at the time Malone was hired by the network and who was chiefly responsible for hiring Malone. *See* Fed. R. Evid. 701. *See also Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (noting that lay witnesses may offer opinions based on inferences from facts known to them). The statements by Rhodes that TCT challenges as legal conclusions concern whether Malone was under a disability, a matter that currently is not in dispute between the parties; in any event, Rhodes is not attempting to prove that Malone was under a disability and instead is merely testifying to a personal impression based on observation of Malone. The statements by Rhodes that TCT challenges as hearsay clearly are admissions of a party and thus are not hearsay. *See* Fed. R. Evid. 801(d)(2). Finally, Rhodes has not contradicted his earlier deposition testimony (it appears he has not been deposed in this case), and if something in Rhodes's affidavit contradicts Malone's deposition testimony, that goes to the weight and not the admissibility of the testimony at issue. *See Anderson*, 477 U.S. at 255 (district judges are not to make determinations about the credibility of witnesses at the summary judgment stage). The Court concludes that Rhodes's affidavit is proper under Rule 56(e) and declines to exclude the affidavit from the summary judgment record.

Having determined that Marvin Rhodes's affidavit is competent evidence on summary judgment, the Court is quite firmly of the view that there is a genuine issue of material fact for trial here as to whether TCT terminated Malone by reason of Malone's disability, in violation of the ADA. According to Rhodes, during the period of Malone's employment by TCT, Malone more than satisfied the legitimate expectations of his employer:

> Throughout the time that I worked with Mr. Malone I was pleased with the work he performed. It was clear that Mr. Malone was very professional, had significant experience, was passionate about delivering an excellent product, and over all, was a very good director. If I had been asked to rate Mr. Malone on the work he did at TCT, I would have given him an 8 or 9 on a scale of 10. Frankly, I cannot think of a reason why I would downgrade him to an 8 or 9, but I'm someone who believes there is always room for improvement. I simply never had any concerns with Mr. Malone as a Director.

Doc. 28-1 at 4 ¶ 21. According to Rhodes, Garth Coonce, TCT's president, also was satisfied with Malone's work as a director and expressed only minor criticism of Malone's directing on two occasions:

> . . . I knew that Mr. Coonce was quite pleased with Mr. Malone's work product. If there is something that Mr. Coonce does not like, he is very quick to point it out. Mr. Coonce was always pleased with Mr. Malone's directing and he only raised issues about Mr. Malone's directing on two different occasions. Both of those issues were fairly minor things that were purely subjective. On one occasion Mr. Coonce told me that the pedestals of the cameras were "sky high" that day during Mr. Coonce's program and that Tim needed to deal with that. Tim did. And the other situation was during the week of anniversary programs (May 14th - 19th, 2007). Mr. Coonce sent word to me that he didn't like Tim staying on a shot of a guest for as long as Tim had stayed on that camera. Both concerns were 100% purely subjective. Another person might say the camera pedestals were just the right height, and that Mr. Malone kept a guest on the same camera for an appropriate amount of time. Both perspectives could be right as this is purely subjective. In both cases, Mr. Coonce was not upset but merely asked that something be done a different way – and that was a very fair request. Mr. Malone respectfully complied with what I asked of him. In the grand scheme of things, these were criticisms so minor they really don't rate being mentioned here other than those are the only two occasions I can remember that Mr. Coonce was unhappy with Mr. Malone's decisions in

directing.

*Id*. ¶ 22. Importantly, Rhodes, who was Brayfield's superior, attests that Brayfield never made any criticism to him of Malone's directing ability: "Up until I left on May 21st[, 2007], Ms. Brayfield had not complained to me about anything substantive about Mr. Malone's work. She did not complain or criticize his directing ability." *Id*. at 5 ¶ 27.[3]

Equally importantly, Rhodes also gives testimony concerning statements made to him by Brayfield regarding Malone that, if credited by a fact-finder, constitutes direct evidence of discrimination against Malone on the basis of his disability:

> From the very beginning, Ms. Brayfield made it known to me (I was her immediate supervisor) that she did not like Mr. Malone being employed as a Director. Ms. Brayfield, however, to the best of my recollection, never criticized Mr. Malone's technical abilities as a Director. Rather, Ms. Brayfield complained to me about Mr. Malone's lack of mobility and physical abilities. It was obvious to me that she was using his disability to disguise her not wanting him on staff. She had to focus on his disability because she certainly would have had a difficult time criticizing his directing ability.
>
> * * * *
>
> On multiple occasions Ms. Brayfield complained to me that Mr. Malone had difficulty doing physical things like going up and down stairs to the production offices and editing suites. In fact, I had one such conversation with her in early May. Mr. Malone's lack of physical abilities was virtually the sole focus of her conversation with me that day. It was clear to me that Ms. Brayfield's agenda was to get Mr. Malone out of TCT – and to accomplish that, she focused on his lack of physical abilities.
>
> * * * *
>
> Ms. Brayfield's concerns about Mr. Malone were completely misplaced. While it is

---

3. To the extent TCT suggests that Rhodes's termination by the company gives him an incentive to testify adversely to TCT in this case, that obviously is a question going to the weight of Rhodes's evidence, a matter that is, as already has been noted, outside of the Court's purview on summary judgment.

>true that Mr. Malone could not climb ladders or move lighting, or easily go up or down the steep stairs to the production offices and editing suites, we all knew that Mr. Malone had severe physical limitations. But he was hired for his directing abilities, not his ability to move sets, monitors, climb ladders, etc. He was hired for the abilities between his ears, an ability that requires that "special" talent and a way of thinking that he has and all good directors possess.

Doc. 28-1 at 4-5 ¶¶ 24-26. As Malone points out in his brief in opposition to summary judgment, Rhodes's testimony about discriminatory statements by Brayfield, one of the TCT employees directly involved in the decision to terminate Malone, is highly probative direct evidence of unlawful discrimination. *See Rothman v. Emory Univ.*, 123 F.3d 446, 451 (7th Cir. 1997) (statements by a decision-maker responsible for a contested employment decision that show a discriminatory motive for the decision are direct evidence of discrimination). If a jury credits Rhodes, plainly it could find that Brayfield was motivated by Malone's disability to terminate Malone's employment. Summary judgment will be denied in this case.[4]

---

4. In addition to Rhodes's testimony concerning Brayfield's discriminatory remarks about Malone, Malone points to several other pieces of circumstantial evidence that could support a finding that TCT unlawfully discriminated against Malone, including: the extraordinary divergence between the testimony of Rhodes and Brayfield about whether Brayfield complained about Malone's work to Rhodes and between the testimony of Rhodes and Brayfield about whether Malone satisfied TCT's legitimate expectations; the fact that Malone was required to undergo a physical examination before being hired by TCT; and the fact that TCT did not abide by its personnel rules in terminating Malone. The Court notes that there appears to be a factual dispute among the parties about whether TCT's president Garth Coonce was involved in the decision to terminate Malone and about whether all TCT employees are required to undergo a physical examination before being hired by TCT. The Court notes also that, to the extent TCT attempts here to invoke the so-called "same actor" inference, that is, the inference that where an employee is terminated by the same actor who hired him or her, the reason for the termination is not discriminatory, there is a dispute of fact about whether any of the persons at TCT involved in hiring Malone were involved also in firing him and, in any event, as Malone points out, the same actor inference does not warrant a grant of summary judgment for TCT, as the Court is required at this juncture to draw inferences in favor of Malone, as the non-moving party. *See Filar v. Board of Educ. of City of Chicago*, 526 F.3d 1054, 1065 n.4 (7th Cir. 2008); *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 747 (7th Cir. 2002); *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 291 n.3 (7th Cir. 1999); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 744-45 (7th Cir. 1999).

### III. CONCLUSION

TCT's motion for summary judgment (Doc. 18) and TCT's motion to strike the affidavit of Marvin Rhodes (Doc. 26), construed by the Court as a motion to exclude the affidavit from evidence, are **DENIED**.

**IT IS SO ORDERED.**

DATED:  November 24, 2009

                                          /s/ G. Patrick Murphy  
                                          G. PATRICK MURPHY  
                                          United States District Judge